IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:11-cr-00012-4 |
| | ) | |
| DOMINIQUE SIMONS | ) | Senior Judge Wiseman |

### ORDER

Before the Court is defendant Dominique Simons' Motion to Suppress All Fruits of the Unconstitutional Search of xxx Renee Court (ECF No. 753), filed along with a supporting Memorandum of Law (ECF No. 754). The government filed its response in opposition to the motion (ECF No. 998), and the defendant filed a reply brief (ECF No. 1016). Oral argument on the motion was conducted on Wednesday, July 11, 2012. Based on the parties' submissions and the arguments heard in open-court, for the reasons set forth herein, the motion is hereby **DENIED**.

### I. PROCEDURAL BACKGROUND

On December 9, 2010, a search warrant was issued by Magistrate Judge Cliff Knowles authorizing a search of Dominique Simons and his residence, 671 Renee Court, Clarksville, Tennessee. This warrant was issued based on a 185-page Affidavit submitted by Agent James R. Whitsett, a Task Force Officer for the United States Drug Enforcement Administration ("DEA"). (ECF No. 403, Affidavit.) Agent Whitsett specifically sought judicial authorization to search "the person of Dominique Simons a/k/a Disco," and "the person of Brian D. Vance a/k/a Bird a/k/a Birdman a/k/a Da Bird." (Affidavit at 3, ¶ 3). Further, he sought sanction to search "Vance's stash house at 671 Renee Court, Clarksville, Tennessee, where Simons also stays and all vehicles at that premises which are connected to Vance, Simons, or the occupants of that residence." (*Id.* ¶ 3(b)). The warrant also authorized the search of two other residences associated with Vance.

The warrant was executed on December 11, 2010, when Agent Whitsett, working with various government agents, searched the entirety of 671 Renee Court, all vehicles located on that property, and the person of Dominique Simons. The defendant objects to the use of any evidence obtained by the

government as a result of these searches, on the basis that (1) the affidavit submitted in support of the search warrant did not provide adequate probable cause; (2) no nexus was created with the defendant's residence Renee Court; (3) the justification for searching the residence was stale; and (4) the search warrant was based on illegally intercepted phone conversations.[1]  The defendant further argues that the good-faith exception established by *United States v. Leon*, 468 U.S. 897 (1984), does not pertain in this case because Agent Whitsett's affidavit is "so lacking in indicia of probable cause" that no nexus with the place to be searched was established.  (ECF No. 754, at 8 (quoting *United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir. 2006).)  The defendant also contends that the good-faith exception does not save the search warrant in this case because the evidence in the affidavit was insufficient to establish the existence of an ongoing criminal enterprise, such that "[n]o well-trained officer could have reasonably relied on a warrant issued on the basis of this affidavit."  (ECF No. 754, at 10 (quoting *United States v. Hython*, 443 F.3d 480, 488–89 (6th Cir. 2006)).)

The government refutes each of these arguments, and further maintains based on *Davis v. United States*, --- U.S. ----, 131 S. Ct. 2419, 2426–26 (2011), that even if a constitutional violation occurred, suppression is not warranted because the "social cost of compromising a criminal case against a multi-convicted felon and high ranking gang member such as Simons more than outweighs any deterrent value that would flow from suppression, especially in light of the lengthy investigation and the detailed affidavit in support of the search warrants in this case."  (ECF No. 998, at 14–15.)[2]

## II.  THE WARRANT AND AFFIDAVIT

The lengthy affidavit prepared by Agent Whitsett was used to support the issuance of a number of warrants to search places, vehicles, and people, including most of the named defendants in this case, for evidence relating to drug trafficking, use of communications facilities in the commission of drug felonies, drug conspiracy, and maintaining or using a place for drug-related purposes, all in violation of various

---

[1] The wiretap authorizations for interception of phone conversations were the subject of separate motions to suppress, which this Court has already denied.  This basis for suppression has therefore been mooted.

[2] The government initially challenged Simons' standing to challenge the search executed at 671 Renee Court.  At the hearing, however, the government conceded that Simons had adequately established standing.

federal criminal statutes. (*See* Affidavit at 1–4 (listing fifteen individuals for whom search warrants were sought).) Thus, only part of the lengthy affidavit pertains to the search warrant contested by the present motion.

In his affidavit, Agent Whitsett states that the facts detailed in the affidavit are based on his first-hand knowledge obtained through the course of his investigation or learned from other law-enforcement sources during the investigation, and further states that not every fact known to Whitsett regarding the investigation is set forth in the affidavit. Agent Whitsett provides information regarding his background and experience, stating that at the time the affidavit was submitted he had been a Task Force Officer with the DEA for six years and had been in law enforcement for twenty years. According to the affidavit, Whitsett has during the course of his career written, executed, or assisted in the execution of hundreds of state and federal warrants for narcotics, records and documents related to drug trafficking, and proceeds obtained from illegal enterprises, testified in federal and state courts numerous times concerning all aspects of drug trafficking, and received extensive training in drug-trafficking investigations. (*Id.* at 5–6.) The affidavit sets forth several pages of information Whitsett has learned to be true regarding drug-trafficking enterprises and organization, including that drug traffickers often place assets derived from their criminal activities in the names of other persons or corporate entities; that drug traffickers typically maintain and have access to large amounts of cash in order to finance their on-going business; and that drug dealers frequently maintain books, records, and other documents relating to the operation of the drug-trafficking enterprise in a residence, vehicle or business maintained by themselves or their associates. (*Id.* at 6–8.)

Agent Whitsett also noted that he is aware that the Sixth Circuit Court of Appeals has upheld the search of drug traffickers' residences "even if there is no direct evidence that actual drug distribution or storage occurred at the residence, especially where continuing illegal activity has occurred." (ECF No. 756, at 8 (citing *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008) (collecting cases which hold that an "issuing judge may infer that a criminal suspect keeps the 'instrumentalities and fruits' of his crime in his residence")).)

The affidavit also provided details regarding the scope of the investigation underlying this case, which began in 2006, and led to the issuance of a series of wiretap orders by Judge Campbell for

telephones used by Robert Porter, Donnie Patterson, Brian Vance, and Gregory Brooks, all identified as persons involved in a conspiracy to distribute illegal narcotics.

The affidavit contains information relating specifically to the residence at Renee Court and Dominique Simons. Initially, the affidavit states that court-ordered GPS tracking of Vance's cell phone and physical surveillance resulted in the identification of 671 Renee Court as "a residence used by Brian Vance to store drug proceeds and store and distribute marijuana." (Affidavit at 53.) The actual evidence cited in support of that statement is relatively thin, but not completely absent. The affidavit relates the following evidence regarding Vance's contact with Simons and with 671 Renee Court:

> (1) Cumberland Electric Membership Corporation records show that the electric service for 671 Renee Court is in the name of Aaron Burney with a work phone number of 931-237-9109, which is the number for a telephone used by Brian Vance (Target Telephone 2 ("TT2"), which was subject to a wiretap). On August 30, 2010 at 14:48, a call was intercepted over Target Telephone 2 between Brian Vance and Dominique Simons during which Simons asked Vance in whose name is the power was listed, to which Brian Vance stated Aaron Burney. (*Id.* at 53.) Whitsett interpreted this conversation as referring to the power for the residence located at 671 Renee Court. (*Id.*).
>
> (2) An intercepted call between Brian Vance and Dominique Simons occurred on August 19, 2010 at 13:30:44, during which Vance told Simons he could not get into the house at 671 Renee Court, and that he thought Simons was going to leave the key for him. Simons stated he forgot to leave the key, and they two arrange for Simons to leave the key elsewhere for Vance to pick up. Follow-up calls at 13:37 and 18:39 concern the key to the house, and a plan for Vance to return the key to Simons. (*Id.* at 54.)
>
> (3) Other calls on TT2 also intercepted on August 19, 2010 indicated that Brian Vance was going to make a marijuana purchase from an unknown male on that day. Surveillance units were sent to 671 Renee Court in an attempt to follow Brian Vance, and investigators observed a black Pontiac pull into the driveway of 671 Renee Court at about 14:03, in other words, just after the telephone conversations during which Vance coordinated with Simons to get the key to the residence. Vance was seen exiting the car, walking up the front steps, pausing at the front door a few seconds as though fumbling with keys, and then entering the house followed by three other individuals (two identified as defendants in this case and one unknown). (*Id.* at 54–55.) Based on the physical surveillance and wiretap evidence showing Vance went to 671 Renee Court just before an alleged sale of marijuana, Whitsett stated in the affidavit that "investigators believe that Vance stores drug proceeds at this location since he generally goes to this location before meeting [Robert] Porter to conduct drug deals." (*Id.* at 36–37.)
>
> (4) The affidavit also recounts that investigators have heard, through intercepted calls, "the sound of money being counted" while Vance was at 671 Renee Court just before going to meet Robert Porter at Donnie Patterson's residence "to conduct drug transactions." (*Id.* at 37.) The affidavit does not state when the call or calls occurred during which Vance could allegedly be heard counting money.
>
> (5) Vance received a call from Simons on TT2 on August 22, 2010 at 13:20:13; the two conducted a conversation that investigators interpreted to mean that Simons asked Vance if Vance had any crack cocaine stored in the Summit Heights housing

complex. (*Id.* at 55.)

(6) In another call that took place on August 26, 2010 between Brian Vance and Dominique Simons, Simons was understood to be expressing concern about the quantity and quality of crack cocaine that he had received from Vance, and Vance informed Simons that the quality of the powder cocaine had affected the weight of the cocaine that Vance had received. Vance also indicated to Simons that he was planning to go back into "the kitchen" (in a house located at 997 Happy Hollow in Clarksville) and that Simons should bring the cocaine back to him so that Vance could cook it again to get a better product. (*Id.* at 39–40.)

(7) Simons called Vance at 13:39 on September 2, 2010 and advised Vance that he wanted Vance to manufacture an ounce of crack cocaine for him. During the conversation Vance stated "I'm fixin to go in the kitchen now, Joe." (*Id.* at 56.) Agent Whitsett testified regarding this exchange that he is aware that the term "kitchen" is referred to by crack cocaine traffickers when informing someone that they [are] about to or are in the process of manufacturing crack cocaine." (*Id.*) Whitsett also stated that he was aware that Brian Vance and Dominique Simons are members of the Vice Lords street gang operating in Clarksville, Tennessee and that "Joe" is a greeting used among Vice Lord members as a sign of respect. (*Id.*) Whitsett does not offer any evidence in support of his allegation that Vance and Simons are both members of the Vice Lords gang.

In the same conversation, Simons stated he had been attempted to call Vance all morning, and that he had also contacted another defendant, Joshua Dix, for the purpose of purchasing crack cocaine, but Dix had no supply. Vance responded, "Naw, ain't nobody got nothing, they sold it all." (*Id.*)

(8) On September 8, 2010 at 14:09:57, Simons called Vance on TT2 and told him he wanted to purchase an ounce of crack cocaine. During the conversation Dominique Simons stated "I need you to go on and pinch and get me one together. Is it going anytime soon? Hello?" (*Id.* at 57.)

(9) Simons called Vance on September 13, 2010 at 17:28:47 asking to purchase a half ounce of crack cocaine. (*Id.* at 57–58.)

(10) The next day, on September 14, 2010, Vance and Robert Porter and others met up at Donnie Patterson's residence, and Porter transferred to Vance a substantial quantity of cocaine in exchange for cash, after a series of telephone calls to arrange the transaction. The affidavit states:

> After such calls [referring to the telephone calls between Vance and Porter to arrange the drug buy], GPS information from [TT2] and Target Telephone 3 [also used by Vance] indicated that Brian Vance was in the area of 671 Renee Court. Your Affiant is aware from training and experience that controlled substance traffickers often store assets and cash gained from the sale of controlled substances at residences which they use or control but that are not leased in their names. Your Affiant believes 671 Renee Court is a location used by Brian Vance as a safe house to store drugs and drug proceeds and which is not known to all of the co-conspirators. Based on your Affiant's training and experience stash locations often contain drugs, drug proceeds, drug processing materials, telephones, contact list for co-conspirators, firearms, and drug trafficking records.

(*Id.* at 60.)

Finally, the affidavit details Dominique Simons' criminal history, which is not extensive. Simons

was convicted in November 2003 on two counts of Aggravated Assault and two counts of Aggravated Burglary, for which he was sentenced to five year terms, to be served concurrently. Simons had also been arrested "multiple times" on controlled-substance charges and violent-crimes charges, but the disposition of these arrests was unknown to the affiant. (*Id.* at 61.)

Although the affidavit does not concern any information regarding Simons or Renee Court after September 14, 2010, it does provide additional details concerning Brian Vance and his drug-dealing activities through October and November 2010, suggesting that Vance at least remained involved in drug dealing.

### III. ANALYSIS

#### A. Standard of Review

Whether a search warrant affidavit establishes probable cause is a legal question that the court considering a motion to suppress considers *de novo*. *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010); *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir.2005). However, in reviewing a magistrate's decision to issue a warrant, this Court must accord the magistrate's determination "great deference." *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc). Further, in determining whether an affidavit submitted in support of a search warrant establishes the requisite probable cause, this Court must look only to the four corners of the affidavit. *Brooks*, 594 F.3d at 482.

To establish probable cause adequate to justify issuance of a search warrant, the governmental entity or agent seeking the warrant must submit to the magistrate an affidavit that establishes "a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). Whether the affidavit gives rise to this fair probability "depends on the totality of the circumstances." *Frazier*, 423 F.3d at 531 (citing *Gates*, 462 U.S. at 230). "The probable cause standard is a 'practical, non-technical conception' that deals with the 'factual and practical considerations of everyday life.'" *Id.* (quoting *Gates*, 462 U.S. at 231).

When a warrant applicant seeks to search a specific location, the affidavit must establish "a nexus between the place to be searched and the evidence to be sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). "The critical element in a reasonable search is not that the

owner of property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *Frazier*, 423 F.3d at 532 (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)).

In addition, in seeking to establish probable cause to obtain a search warrant, the affidavit may not employ and rely upon "stale" information; the question of whether information is stale depends on the "inherent nature of the crime." *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (quoting *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988)). Thus, whether information is stale in the context of a search warrant turns on several factors, such as "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), [and] the place to be searched (mere criminal forum of convenience or secure operational base?)." *United States v. Hammond*, 351 F.3d 765, 771–72 (6th Cir. 2003) (quoting *United States v. Greene*, 250 F.3d 471, 480–81 (6th Cir. 2001)). In the context of drug crimes, the Sixth Circuit has recognized that information may go stale very quickly "because drugs are usually sold and consumed in a prompt fashion." *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009); *see id.* ("Thus, the court must first focus on whether information that is sixteen-months old is stale. In the drug trade, the answer is usually yes."). *But see United States v. Kennedy*, 427 F.3d 1136, 1142 (8th Cir. 2005) ("[I]nformation of an unknown and undetermined vintage relaying the location of mobile, easily concealed, readily consumable, and highly incriminating narcotics could quickly go stale in the absence of information indicating an ongoing and continuing narcotics operation.").

### B. The Nexus Requirement

The defendant here argues that the affidavit in support of the search warrant failed to support the existence of a nexus between the place to be searched and the evidence to be sought, citing *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010). In particular, the defendant points out that the vast majority of Agent Whitsett's statements in the affidavit concern other persons rather than Dominique Simons and occur elsewhere than at 671 Renee Court. Specifically, the affidavit states that Brian Vance went to Renee Court on August 19, 2010; that on the same day in August, Vance and Simons had a conversation about Vance being locked out of the house; on August 22 and 26, and September 2, 8, and

13 2010, Vance and Simons discuss the purchase or manufacture of crack; on August 30, 2010, Simons asked Vance in whose name the electrical power for 671 Renee Court was listed. On September 14, 2010, Vance purchased drugs from Robert Porter, and GPS placed him in the vicinity of Renee Court just after the phone calls setting up the meeting time. The affidavit further states that Vance and Simons are known to be members of the Vice Lords gang.

The evidence set forth in the affidavit is sufficient to give rise to a more-than-reasonable basis for believing that *Brian Vance* was engaged in dealing drugs—the defendant here does not dispute that inference. Further, the evidence showed that Vance was the person who knew in whose name the utilities for the house were listed, that his phone number was given as the contact number for the electrical service, and that he sometimes made use of the house and had access to a key. This evidence, considered in its totality, is sufficient to give rise to a reasonable inference that Vance exercised some form of dominion over the property. The evidence in the affidavit was also sufficient to permit a reasonable person to infer that Dominique Simons was engaged in dealing drugs—that he purchased cocaine from Vance with sufficient frequency and in sufficient quantities to give rise to an inference that he was not using it all for his personal consumption and therefore was reselling it after purchasing from Vance, at least up through the middle of September 2010. And Simons concedes that he resided at 671 Renee Court. The affidavit also details Agent Whitsett's extensive experience in investigation drug-trafficking conspiracies and relays his belief that evidence of drug trafficking, including cell phones, contact lists, and records of transactions, are often kept in drug traffickers' homes and vehicles.

The Sixth Circuit has repeatedly held that it is reasonable to infer that evidence of illegal activity will be stored at a drug traffickers' residence. For instance, in *United States v. Gunter*, 551 F.3d 472, 481 (6th Cir.), *cert. denied*, 130 S. Ct. 194 (2009), the defendant argued that the requisite nexus was missing because the search warrant affidavit mentioned his residence one time in passing, and did not connect any illegal activity with the residence. The Sixth Circuit simply stated that this argument was "misguided" in light of evidence set forth in the affidavit showing that the defendant "was engaged in repeated purchases of cocaine in the one to four kilogram range. Because the quantity of drugs and the repeated nature of the transactions make it reasonable to conclude that Gunter was engaged in ongoing drug trafficking, it was reasonable to infer that evidence of illegal activity would be found at Gunter's

residence." *Id.* at 481 (citing *United States v. Jones*, 159 F.3d 969, 974-75 (6th Cir.1998) (probable cause to search residence existed where defendant engaged in two recorded drug sales outside of his residence because "[i]n the case of drug dealers, evidence is likely to be found where the drug dealers live"). *See also United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008) (although the warrant did not tie any illegal activity to the defendant's residence, holding that "the warrant application demonstrated 'continuing and related illegal firearm activity,' from which the issuing judge could infer that evidence pertaining to the handguns would be found in Williams's residence").

In light of evidence in the affidavit of Brian Vance's ongoing drug-trafficking activities in particular and the relationship of both Brian Vance and Dominique Simons' with the residence at Renee Court, this Court finds that the affidavit established a sufficient nexus with the residence to be searched.

**C.     Staleness**

More problematic is the issue of staleness. The affidavit sets forth facts relating to Dominique Simons and Renee Court in August and September 2010, but the warrant was not obtained and executed until December 2010. The question is whether the approximately three-month gap between that evidence and issuance of the search warrant rendered this evidence "stale" by the time the warrant was obtained. As the defendant points out, the investigation did not stop in September 2010, and surveillance and other evidence detailed in the affidavit after that date showed that Vance was frequently found at other locations (on Happy Hollow Road, Summit Heights, and Acorn Drive, among possible others), but does not indicate an ongoing connection with 671 Renee Court.

However, the defendant does not refute that electric power at 671 Renee Court continued to show Vance's telephone number (TT2) as the contact telephone number for that address. Further, he has not pointed to any case law suggesting that evidence of drug trafficking two- to three-months old has been considered "stale" in a similar context. Rather, the cases cited and relied upon by the defendant are clearly distinguishable and generally involved much greater lapses of time. In *United States v. Paymon*, 523 F. Supp. 2d 584 (E.D. Mich. 2007), the court invalidated a warrant issued and executed in 2007 where most of the information used to support the warrant dated came from the 1990s and early 2000s. The investigators had no current information to show that the defendant was engaged in drug trafficking, as a result of which the court found that the evidence was stale and that there was no nexus between the

defendant's home and the alleged illegal drug trafficking. In *United States v. Ervin*, No. 3:09-00130, 2010 WL 200799 (M.D. Tenn. January 14, 2010), most of the evidence used in support of a search warrant was based on the statements of a confidential informant, but the affidavit in support of the warrant was silent as to the reliability of the informant and officers had not independently corroborated the information provided by the informant. In addition, the informant stated that he had purchased drugs from the residence subject to the search six months prior to execution of the warrant. Judge Campbell found that the warrant was without probable cause and, even if the drug purchase six months prior were sufficient to establish probable cause, the evidence was stale in the absence of evidence that the residence in question was a "secure operational based for an ongoing drug enterprise." *Id.* at *9 (quoting *United States v. Kennedy*, 427 F.3d 1136, 1142 (6th Cir. 2005). A third case relied on by the defendant, *United States v. Haney*, No. 07-cr-20313-MI, 2012 WL 1657109 (May 10, 2012), involved alleged child sexual abuse and pornography rather than drugs, and the court found that the search warrant at issue was "so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable." *Id.* at *1 (quoting *United States v. Leon*, 468 U.S. 897, 923 (1984). There, however, the affidavit was deficient because it contained no information regarding how much time had passed since the events alleged in the affidavit. The court held that, "[i]n the absence of any temporal reference point, the affidavit failed to establish probable cause to believe that evidence of child pornography would be found at Defendant's residence at the time the warrant issued." *Id.* at *2.

In the present case, approximately three months had passed between the last referenced contact between Vance and Simons and between Vance and 671 Renee Court. However, the evidence established that Vance, at least, was engaged in an ongoing criminal enterprise and that he had a continuing connection with 671 Renee Court. Moreover, as the government points out, the warrant did not purport to "just" seek drugs but also other items of more enduring character, including ledgers and records, telephones, names and addresses of contacts, and drug proceeds. While this issue presents a close call, particularly in light of the absence of evidence to suggest that Simons himself was actually selling drugs, the Court nonetheless finds that the evidence related in Whitsett's affidavit in support of the search warrant was not so stale that probable cause to search the residence was absent.

      **D.**      **The Good-Faith Exception under *United States v. Leon***

Even if the evidence in the affidavit was insufficiently recent to support the magistrate judge's conclusion that there was "a fair probability that contraband or evidence of a crime will be found" at 671 Renee Court, *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)), the Court further concludes that the evidence obtained through execution of the warrant is admissible pursuant to the good-faith exception first established by the Supreme Court in *United States v. Leon*, , 468 U.S. 897 (1984).

Pursuant to *Leon*, the exclusionary rule does not bar evidence "seized in reasonable, good-faith reliance on a search warrant that is subsequently held to be defective." *Id.* at 905. This good-faith exception does not apply in four situations:

> (1) Where the issuing magistrate was misled by information in an affidavit that the affiant knew was false, or would have known was false except for a reckless disregard for the truth.
>
> (2) Where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police.
>
> (3) Where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.
>
> (4) Where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.

*Id.* at 923; *United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006).

Here, there is no evidence that Magistrate Judge Knowles was misled by false or misleading information in the affidavit or that he "wholly abandoned" his judicial role. Further, Whitsett's 185-page affidavit was clearly not a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining probable cause.[3] With respect to official reliance on the affidavit, the determination of "good-faith reliance, like a determination of probable cause, must be bound by the four corners of the affidavit." *Hython*, 443 F.3d at 487; *United States v. Laughton*, 409 F.3d 744, 751 (6th Cir. 2005). The "relevant question is whether the officer reasonably believed that the warrant was properly issued, not whether probable cause in fact existed." *Hython*, 443 F.3d at 487; *Laughton*, 409 F.3d at 752. The good-

---

[3] The primary problem with the affidavit, instead, was that it was overly long. In addition, it contained information about the residence in Renee Court in several different sections, some of it duplicative, which risked making it appear as though the affidavit contained more information about Renee Court than it actually did. (*Compare* Affidavit pages 36–37 *with* pages 54–55.)

faith test is an objective one, that "prevents reviewing courts from delving into an analysis of the subjective knowledge of affiants." *Hython*, 443 F.3d at 487; *Laughton*, 409 F.3d at 752. The determination of objective reasonableness "inquires 'whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's decision.'" *United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008); *United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003) (both quoting *Leon*, 486 U.S. at 923 n.23).

The third and fourth *Leon* exceptions can be overcome with a "modicum of evidence, however slight, to connect the criminal activity described in the affidavit to the place to be searched." *Laughton*, 409 F.3d at 749. However, the Sixth Circuit has found that the exception does not apply when the search warrant affidavit (1) does not establish any nexus between illegal activity and the place to be searched, *id.* at 751; (2) absolutely fails to establish probable cause, *Helton*, 314 F.3d at 821-23; or (3) relies on clearly stale information. *Hython*, 443 F.3d at 487–88.

In the present case, unlike the cases to which the defendant cites in which the good-faith exception was held not to apply, Whitsett's affidavit establishes that the defendant lived, at least some of the time, at the residence to be searched and that Brian Vance had a connection to the location as well. Further, although the evidence in the affidavit pertaining either to Dominique Simons or his residence on Renee Court was three months old at the time the search warrant was sought, this amount of time was not so extreme as to render reliance on it unreasonable, particularly in light of the evidence that suggested that Brian Vance was involved in an ongoing criminal enterprise. Thus, even if the Court were to accept the defendant's argument that the evidence in the search warrant affidavit was impermissibly stale, the warrant is nonetheless saved by the *Leon* good-faith exception.

## IV. CONCLUSION

For the reasons set forth herein, defendant Dominique Simons' motion to exclude evidence obtained from the search of 671 Renee Court (ECF No. 753) is denied.

It is so **ORDERED**.

Thomas A. Wiseman, Jr.
Senior United States District Judge